(77 App. Div. 592.)

OCORR & RUGG CO. v. CITY OF LITTLE FALLS et al.

(Supreme Court, Appellate Division, Fourth Department. December 16, 1902.)

1. CITIES—CORPORATE AGENCIES—BOARD OF EDUCATION.

Under Laws 1895, c. 565, as amended, constituting the charter of the city of Little Falls, providing for and prescribing the powers and duties of a board of education, and the consolidated school law, the board of education of the city of Little Falls is not a body corporate, but is one

of the agencies of the municipality, so that its acts, within the scope of such agency and the provisions of the charter, are the acts of the city.

2. SAME—ELECTIONS—FAILURE TO COMPLY WITH STATUTE.

Under Laws 1895, c. 565, § 80, as amended, constituting part of the charter of the city of Little Falls, and providing that the common council may, after giving notice, submit to the electors the proposition to raise by tax a specified sum for the construction of a new building, etc., an election held pursuant to a notice of the board of education, without the authority of the council, and without the required notice, was of no binding force against the city.

3. SAME—UNAUTHORIZED CONTRACT—PLEADING—DEFENSE.

In an action by a subcontractor against a city to enforce his lien, plaintiff alleged the making of the contract under which the lien accrued and that it was duly authorized. The answer admitted the making of the contract and did not allege that it was invalid or unauthorized. *Held*, that the city could not avail itself of the defense that the contract was unauthorized, and the more clearly so as it had by taxation raised money to discharge the obligation imposed by the contract.

4. BUILDING—SUBCONTRACT—CONSENT.

A building contract provided that the contractor should not subcontract any part of the work without the consent of the architect. At the time the contract was let the contractor informed the board in charge of the work that a certain person as subcontractor would do the carpenter work. The subcontractor was present at the time, and neither the board nor the architect made any objection to the subcontract. The subcontractor performed work on the building for over a year and to the value of several thousand dollars, and no objection was made until he sued to enforce his lien. *Held*, that the consent of the architect was in effect given as required.

5. SAME—ACQUIESCENCE—EFFECT.

If this had not been so, the owner, after having so long acquiesced with knowledge of the facts, was not in a position to claim that the contract was invalid merely because of the want of consent of the architect.

6. SAME—STATUTORY PROHIBITION.

Laws 1897, c. 444, providing that if any contractor to whom a municipal contract is let shall, without the previous written consent of the department or official awarding the same, assign, transfer, convey, sublet, or otherwise dispose of his contract, or his right, title, or interest therein, or his power to execute such contract, to any other person, the municipal corporation shall be relieved and discharged from any and all liability, was intended to prevent a sort of brokerage in such contracts, and should not be construed to forbid a contractor for the erection of a brick school building from subcontracting the carpenter work.

7. SAME—FAILURE TO COMPLETE.

In an action on a building contract, providing that the building should be completed by a certain time, the fact that it was not so completed was no defense when it appeared that the delay was caused by the owner's fault.

8. REFEREES—FINDINGS—APPEAL.

A referee's findings of fact, supported by evidence, will not be disturbed on appeal.

9. BUILDING CONTRACT—ARCHITECT'S CERTIFICATE—NECESSITY

Notwithstanding that a building contract required the architect's certificate as a condition precedent to payments thereunder, the architect's certificate was not necessary to the maintenance of an action thereon; it appearing that the owner had declared the contract forfeited and taken possession of the building for the purpose of completing the same.

¶ 7. See Contracts, vol. 11, Cent. Dig. § 1378.

**10. RECEPTION OF EVIDENCE—REOPENING CASE.**

Whether to reopen the case on plaintiff's motion after all the evidence had been closed, and to receive evidence in chief, was a matter for the discretion of the referee.

Appeal from judgment on report of referee.

Action by the Ocorr & Rugg Company against the city of Little Falls and others. From a judgment for plaintiff, defendant city appeals. Affirmed.

The action was commenced to foreclose a mechanic's lien filed by the plaintiff to secure a balance claimed to be due and owing to it for materials furnished to Messrs. Butler & Benjamin as copartners, and to Charles K. Benjamin as surviving partner, who were subcontractors for doing the carpenter work in the erection of the Little Falls High and Grade School Building, in the city of Little Falls, N. Y., under the defendant William G. Dove, who entered into a contract with the city of Little Falls, by certain individuals named, who constituted the board of education of said city, for the erection and completion of said building.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

J. D. Beckwith, for appellant.
John D. Lynn, for respondent.

McLENNAN, J. The city of Little Falls is a municipal corporation created by chapter 565 of the Laws of 1895, which act, as amended, constitutes its charter. By the charter the territory within the limits of the city is made a union free school district, and provision is made for a board of education consisting of six members; its powers and duties being defined by the charter and the consolidated school law of the state. Such board of education was organized in accordance with the provisions of the act, and at all the times in question was composed of the persons designated as such and named as defendants in this action. Early in the year 1898 the project of erecting a high school building in the city of Little Falls commenced to be agitated, with the result that at an adjourned special meeting of the board of education, held on the 1st day of February, 1898, a resolution was unanimously adopted authorizing the publication of the "notice prescribed by section 9, art. 2, tit. 8, of the consolidated school law, of a special meeting of the legal voters of the school district to be held at Church Street Schoolhouse, Tuesday, March 8, 1898, at 7:30 p. m., to consider a proposition to build new school buildings on the site owned by the district, and now occupied by the Academy and Benton Hall, in the Eastern division, for the estimated sum of $65,000, to be paid in annual installments of $2,000 each," etc. A formal notice of such election, signed by all the members of the board of education, was prepared and published, and at the time mentioned the election was held; the president of the board calling the meeting of the electors to order. A chairman was chosen upon his motion. Upon motion of the chairman a secretary was chosen, and two tellers were selected to receive the ballots. Four hundred ballots were cast, of which 311 were for and 89 against the proposition, and such result was duly certified to the board of education. Thereafter the board caused plans and specifications to be prepared by an architect for the erection of a

school building upon the site specified, which were duly approved, and it then advertised for proposals for doing the work in accordance therewith. Thereafter, and on the 28th day of June, 1898, a contract was entered into "between William G. Dove [the defendant], of the city of Geneva, county of Ontario, and state of New York, party of the first part, and the city of Little Falls, by R. H. Smith, E. J. Burrell, W. R. Chapple, Jay S. Newell, H. A. Tozer, and F. G. Teall, board of education of the city of Little Falls, in that behalf duly authorized by a resolution of the board of education of said city, passed June 15, 1898, and in pursuance of the laws of the state of New York, party of the second part." By such contract Dove, the party of the first part, agreed "to construct and finish in every respect, in the most substantial and workmanlike manner, the Little Falls High and Grade School Building, on the city property, * * * in full accordance with all the plans and specifications and the working drawings drawn and to be drawn by Archimides Russell, architect, all of which forms a part of this contract, and to which strict reference shall be had in the construction of the building in all its parts." Concededly, the installation of the plant for heating the building was not included in the contract. The party of the second part agreed to pay to Dove, for the work to be done and materials furnished by him, the sum of $55,588.28. "Each payment shall be made on the estimate and certificate of the architect, in sums not less than one thousand dollars, and at such times when the value of the materials furnished and the labor performed and in the building, less fifteen per centum, shall amount to one thousand dollars or more, and the remainder, of fifteen per centum of the whole contract price, shall be reserved and paid when the whole work is completed as herein agreed." Dove agreed "to commence the work herein contracted for within ten days after the signing of this agreement, and to complete the whole work to the entire satisfaction of the said party of the second part and architect on or before the 1st day of August, 1899." It was further provided that the first party should carry on the work under the direction of the architect, and should obey all his orders and directions in respect to the labor and materials and the quality of the same, and also as to the progress of the work. It was further "agreed that the said party of the first part shall not subcontract any part of the work herein contracted for without the consent of the said architect"; also, "that in case of any failure to carry out the terms of this agreement, by failure to carry on and complete the whole work at the time herein named and agreed to on the one part, or by the failure to pay the money as herein named and agreed to on the other part, the party so failing shall pay to the other party, as liquidated damages therefor, the sum of ten dollars for each and every day the work remains unfinished, or the money remains unpaid, after the day or days herein named and agreed to."

The foregoing are all the provisions of the contract which have any bearing upon any issue involved in this action. The contract was signed by Dove and by the individuals constituting the board of education of the city of Little Falls, as such. On the 6th day of August, 1898, Dove entered into a contract with the firm of Butler & Benjamin, then composed of William K. Butler and Charles K. Benjamin, and

of which firm Benjamin is now the survivor, by which he (Dove) sublet to said firm all the work which he had undertaken to do under his contract with the city of Little Falls, except the mason work.   In other words, he subcontracted all the carpenter work, including the roofing and iron work connected therewith, Dove retaining all the mason work, which, according to the plans and specifications, included the excavation, foundation, outer walls, and all inside brick work, plastering, etc.; and Dove agreed to pay to Butler & Benjamin, for the work so to be done by them, the sum of $25,377.25, the agreement providing that all work should be done in strict accordance with the terms of the contract between Dove and the city, and that payment should also be made only as therein provided.   No formal consent to the "subcontracting" of the carpenter work was ever given by the architect or by the defendant board of education.   Dove commenced work under his contract within the 10 days after it was executed, and prosecuted the mason work (the work retained by him) to completion, and, so far as appears, substantially to the satisfaction of the appellant.   Butler & Benjamin also entered upon the performance of their subcontract with Dove, and continued in the prosecution of their part of the work until about the 30th day of August, 1899, when they and all their workmen were ordered to cease work and to remove all their tools from the building.   This was done pursuant to a resolution adopted by the appellant's board of education, which declared the contract entered into with Dove forfeited and abandoned, and forbidding him to continue further in the performance of his contract, upon the ground, as stated in the resolution, that he had not completed the building on or before August 1, 1899, as provided in his contract, and because the work had not been done in accordance with the plans and specifications prepared by the architect and as directed by him.   A copy of the resolution and notice of the action of the board was served upon the contractor, and no further work was done upon the building by him or by his subcontractor.   At the time work was stopped all the mason work had been completed, and the balance of the work, as found by the referee, was substantially completed, although the evidence is undisputed that the building was not then ready for occupancy, and that a considerable amount of the interior finishing in many of the rooms had not been done.

The evidence tends to show that the value of the work done and materials furnished by Butler & Benjamin, before they were ejected from the building, was $22,220.   All of the lumber included in this estimate had not actually been put into the building; but the evidence is to the effect that it had been cut and prepared, and was of no value for any other purpose.   The mason work actually done at that time was of the value of at least $27,764.70, which would make the entire value of the work done and materials furnished the sum of $49,984.70, at the time the contract was declared forfeited.   There had been paid by the appellant to apply on the contract the sum of $38,000, leaving a balance of $11,984.70.   The plaintiff, under a contract with Butler & Benjamin, furnished materials to the amount of $8,997.96, which went into the construction of the building or were prepared for that purpose and were made useless for any other.   Of that amount the

sum of $4,852.53 had been paid, leaving the sum of $4,145.43 due and owing to the plaintiff, which is the amount for which its lien was filed. The amount due to the plaintiff, added to the amounts due to all the other lienors, as found by the referee, and the sums already paid by the appellant, is less than the amount which the evidence tends to show is the value of the work done and materials furnished in the construction of the school building. The evidence also shows that there are sufficient funds in the treasury of the appellant, applicable to and presumably raised for that purpose, to discharge all of said liens and all valid claims arising on account of the construction of the building in question.

The appellant resists the payment of the plaintiff's claim and the claims of the other defendants upon the ground—First, that the contract in question was not the contract of the city, and that it incurred no liability on account of the same; second, because the contract for the erection of the school building was not legally authorized and as required by the provisions of the charter of the city; third, because William G. Dove, the person with whom the contract in question was made, had no right or authority to sublet the same, or any part of the work provided for therein, without the consent of the architect, which was not obtained, and therefore that it was in no manner liable to But-ler & Benjamin, the subcontractors, or to any person or corporation furnishing materials to said firm, although used in the construction of the building, and also because such subletting is prohibited by chapter 444 of the Laws of 1897; fourth, because the building, without any fault on the part of the city, was not completed within the time specified in the contract, or at all, by the contractor; fifth, because the plaintiff did not furnish the certificate of the architect, certifying the amount due and unpaid, as required by the terms of the contract; and, sixth, the appellant insists that the judgment should be reversed because of alleged errors committed by the referee in the reception and rejection of evidence, and for other rulings made upon the trial.

First, then, was the contract in question in fact the contract of the appellant, the city of Little Falls? By the charter the city of Little Falls constitutes a union free school district, known as the "Union Free School District of the City of Little Falls." Section 5. Among the elective officers of the city are three "school commissioners, the term of office of each of whom shall be three years, and who shall receive no compensation for their services." Section 11. The election of such commissioners and of all other elective officers "shall be conducted in all respects in the manner general elections in cities are by law required to be conducted, and all the provisions of law relative to such elections shall be applicable to the elections for officers of the city." Section 12. The appointive officers of said city, including "three school commissioners, * * * all of whom shall be appointed by the mayor, subject to confirmation by the common council." Section 14. The term of office "of each appointed school commissioner [shall be three years]. The school commissioners thus appointed shall not receive any compensation for their services." Section 17. "The mayor may suspend orally or by writing, for ten days or less at any one time, any officer of said city [including the three school commis-

sioners appointed by him] appointed by the mayor with the con-
firmation of the common council; but he shall not suspend the same
person more than twice in any one year." The common council may
also remove said commissioners "for any cause by it deemed sufficient,
upon charges, giving such officer [commissioner] reasonable notice
thereof and a reasonable opportunity to be heard, and such officer
may be suspended by the common council pending such investigation."
Section 19. "If a vacancy shall occur, otherwise than by expiration
of term, in any elective office of the city, including the three school
commissioners, the common council shall appoint a person to fill such
vacancy until the end of the official year in which such vacancy oc-
curs. * * * A vacancy occurring in any appointive office of the
city, otherwise than by expiration of term, shall be filled for the balance
of the unexpired term by the same authorities and in the same manner
as an appointment for a full term." Section 20. "Whenever any ex-
penditures to be made or incurred by the common council or any city
board or officer in behalf of the city, for work to be done or materials
or supplies to be furnished, except ordinary repairing or macadamizing
of streets, shall exceed two hundred dollars, the city clerk shall adver-
tise for and receive proposals therefor, in such manner as the common
council or as the board or officer charged with making such expendi-
ture shall prescribe, and the contract therefor shall be let to the lowest
responsible bidder," etc. Section 33. It shall be the duty of the mayor
"to exercise a constant supervision and control over the conduct of
all city officers, including the six school commissioners, and he shall
have power and authority to examine at all times the books, vouchers
and papers of any officer or employee of said city." Section 35. "The
school commissioners of the city of Little Falls shall also be school
commissioners of the union free school district of the city of Little
Falls, and shall constitute the board of education of the city of Little
Falls, and the board of education of the union free school district of
the city of Little Falls. The superintendent of public instruction shall
apportion the state school moneys to the city of Little Falls in the
same manner as to cities having special school acts, and for that pur-
pose this act shall be deemed a special school act, within the meaning
of the consolidated school law." Section 42. "The aggregate for the
annual tax levy for all purposes in this section above specified [fire
and police fund, poor fund, park and cemetery fund, etc.] shall not
exceed the sum of fifty-three thousand dollars. In addition to the
amounts which shall be included in the annual tax levy for the forego-
ing purposes, there shall also be included therein, for the purposes and
uses of the board of education, such sum or sums as the board of
education shall declare necessary in pursuance of general laws." Sec-
tion 53. The board of education "shall deliver to the mayor, on or
before the 15th day of March in each year, a report of all expenditures
made or incurred by such board during the preceding fiscal year,
showing separately and by items the amount expended, * * *
which may be drawn on by such board, the balance at the end of such
year standing to the credit of * * * such fund, [and] the amount
which in the judgment of such board will need to be expended during
the current fiscal year, * * * with the items thereof and the rea-

sons therefor, so far as practicable." Section 54. Section 55 provides, in substance, that the mayor of the city shall present the estimate of the board of education to the common council, and that the common council shall raise by taxation the amount so declared necessary by said board. Section 58 provides that all accounts and claims against said city, of whatever nature, except such as may be lawfully made, incurred, and paid by the board of fire and police, the board of public works, the city board of charities, or the board of education shall be presented to the common council for audit. Section 80 provides that the common council may purchase land and contract for the erection of buildings thereon. Section 190: "The city of Little Falls shall be liable for the bonded and other indebtedness of the village of Little Falls. The union free school district of the city of Little Falls shall be liable for the bonded and other indebtedness of union free school district No. 1 of the towns of Little Falls and Manheim, and shall pay and discharge the principal and interest thereon as the same shall respectively fall due." Section 195 provides that "the board of education of union free school district No. 1 of the towns of Little Falls and Manheim shall be the board of education of the union free school district of the city of Little Falls until the board of education of the city of Little Falls is established." Section 196: "A special city election for the first election of all the elective city officers of said city, except recorder, shall be held within twenty days after the passage of this act. At such city election there shall be elected by the city at large a mayor, a treasurer, * * * one school commissioner for the term of one year, one school commissioner for the term of two years, and one school commissioner for the term of three years." Section 198: "As soon as practicable after the completion of the canvass and the declaration of the result of the votes cast at such special election, the following city officers shall be appointed by the mayor, with the confirmation of the common council, to wit, a city clerk, * * * four fire and police commissioners, * * * four commissioners of charities, * * * three school commissioners to hold office for one, two, and three years, respectively."

The foregoing are all the provisions of the charter of the city of Little Falls which in any manner relate to the board of education of said city, or to the duties or powers which may be performed or exercised by it. Many of them bear but remotely upon the questions now being considered, but it will be observed that the city is made a corporation. The board of education and the other departments of the city are created by the charter, but none of them are by it made corporations or clothed with corporate powers. The board of education is treated precisely the same as the other agencies of the municipality. It is not vested with the power to acquire or hold the title to property, or to perform any corporate act separate and distinct from the city. It is required to report to the common council, in a detailed statement, the moneys necessary for the schools within the city. The city is then required to raise such moneys as are thus reported to be necessary, by taxation levied and collected in the regular way, and, when collected, such sums go into the hands of the treasurer of the city, and are by him credited to the board of education fund, and can only be expended

by such board or by its direction.  The powers and duties of the board of education, so far as they relate to the supervision, control, and management of the schools, are prescribed by the consolidated school law, or by other general or special statutes, and are not attempted to be in any manner regulated by the charter.  The learned counsel for the appellant does not contend that the charter contains any provision which makes defendant's board of education a corporation, or authorizes it to hold the title to real estate or other property; but he insists that the board is a corporation, has a corporate entity, and is vested with all the powers incident thereto, by virtue of the provisions of the consolidated school law.  The consolidated school law declares that such boards of education as are therein provided for are bodies corporate, and they are clothed with the power, among others, to purchase a site or sites for a schoolhouse or schoolhouses, and to take charge of the schoolhouses, sites, etc., within their respective jurisdictions, and title to the same is by the act vested in such boards.  By the consolidated act a board of education is authorized, among other things, to sell school house sites and other property; to purchase, take the title to, and hold real estate and other property; and to cause the moneys necessary for the purchase of real estate, and for the erection of school houses thereon, to be levied upon the taxable property within its jurisdiction, and, when collected, to be expended in such manner as it may deem proper, subject to the restrictions of the act.  In other words, the boards of education created by the consolidated school law are bodies corporate in the broad sense, and are clothed with all the powers incident thereto, and necessary to the performance of the duties imposed upon them by the act.  It is apparent, however, that the boards of education created pursuant to the consolidated act are not of the character of the board authorized by the defendant's charter, and their functions, except in so far as they relate to the management and control of the schools, are entirely different from those of defendant's board.  The members of the boards of education provided for by the consolidated act are elected by the qualified voters of their respective districts, and can only be removed for neglect or malfeasance in office.  One-half of the members of defendant's board of education are appointed by the mayor, with the approval of the common council, and may be removed by them.  The provisions for the filling of vacancies are entirely different in the two laws.  The acts and expenditures of defendant's board are subject to investigation and examination by the mayor.  The provisions relating to expenditures by defendant's board, and the machinery provided for the raising of the funds necessary for the proper maintenance of the schools within its jurisdiction, are entirely different from the provisions relating to those subjects which are contained in the consolidated act.  Many other radical differences might be pointed out.  It is impossible to harmonize the provisions of defendant's charter with those of the consolidated school law, upon the theory that the defendant's board of education has a corporate entity separate and distinct from the city itself, and that it is vested with the comprehensive powers possessed by boards of education created pursuant to the provisions of the consolidated school law.  A careful examination of the two acts leads us

to conclude that the board of education of the city of Little Falls is not a corporation, but is simply one of the agencies of the municipal government, and that its acts, if within the scope of such agency and within the provisions of the charter, are the acts of the city. Without doubt, many, if not all, of the duties of such board, so far as the actual management and control of the schools is concerned, are prescribed by the consolidated school act, and the provisions of that act control, when not in conflict with the charter or with any special law applicable thereto; but corporate power or a corporate entity is not essential to the full performance of all of such duties. The decision in the case of Reynolds v. Board, 33 App. Div. 88, 53 N. Y. Supp. 75, is not an authority for appellant's contention. It is true that in that case the learned justice who wrote the opinion said: "The defendant is a body corporate, created under the consolidated school law of this state." That was the allegation contained in the complaint in that case, and the review in the appellate division involved only the correctness of the decision of the special term overruling a demurrer interposed by the defendant to the complaint, which, of course, admitted all of its allegations, so that the court in its opinion only stated an admitted fact, and one which must have been regarded as established for the purposes of that appeal. The decision in no manner indicates that the court concluded from an examination of the statutes that the board of education of the city of Little Falls was a corporation, or that such question was even considered by the court; but, as before said, the court assumed that the fact alleged in the complaint was true, as it was bound to do when considering the efficacy of the demurrer to such complaint. We conclude that whatever act or thing the board of education of the city of Little Falls did in the name of the city, or for or on its behalf, if within the powers of the city, and if done in accordance with the provisions of its charter, were the acts of the city, and that it alone is liable for the same. This seems to have been the interpretation placed upon the charter by the parties to the contract in question at the time it was executed. The contract was made between the defendant William G. Dove and the city of Little Falls. It is true it recited that it was made by such city, by the persons, naming them, constituting the board of education; but clearly, upon its face, it was a contract between the city and Dove for the erection of the school building. It provided that the building should be erected upon a plot of ground of which the city of Little Falls owned the fee, and that the building should be called the "Little Falls High and Grade School Building." It was to be erected according to plans and specifications prepared by the architect. The contract price was $55,588.28, and the city of Little Falls collected from its inhabitants, presumably by taxation levied in the usual way, the amount of the contract price, for the purpose of paying the contractor for the construction of the building; at least, it had sufficient money in its treasury applicable to that purpose. Under such circumstances it certainly would not be equitable to hold that the city of Little Falls incurred no liability because of the erection of the building, if it was erected and completed in accordance with the terms of the contract, and no provision of law was violated

in respect thereto.   We think the provisions of the statute to which we have referred do not require such holding, but that, on the contrary, the city of Little Falls was authorized, through its board of education, if the proper preliminary proceedings had been taken, to enter into the contract in question, and that in such case it would be liable for the obligations which it thereby incurred; in other words, that whatever obligation was incurred under or by virtue of the contract was incurred by the city of Little Falls.

Was the defendant, through its board of education, authorized by its charter to enter into the contract in question, and were the preliminary steps necessary to the exercise of such power complied with; or, if not, is the defendant now in a position to urge the failure of such compliance as a defense to this action?   Section 80 of defendant's charter provides:

"The common council   *   *   *   may order the construction of a new building or buildings upon lands owned by the city, if the expense thereof shall not exceed five thousand dollars.   The common council may submit to the electors of the city, at any annual or special city election, the proposition to raise by tax, in addition to the amount otherwise allowed by law to be raised in each year, a sum specified, for the purchase by the city of real property, the construction by the city of a new building or buildings, for paving, or for any other special purposes.   Notice that such proposition will be submitted at such election shall be published in the official newspapers of the city at least once a week for three successive weeks next prior to the holding of such election, which notice shall specify the form of ballot for and against such proposition to be used at such election.   If a majority of the electors voting on such proposition at such city election shall vote in favor of such proposition, the amount so voted may all be raised by tax in such year; or the said amount or any part thereof may be borrowed on the credit of the city, in the discretion of the common council."

It is then provided that, in case it is determined to borrow such sums, bonds may be issued therefor; but it is provided that the amount so raised by tax or sale of bonds shall be devoted to the purpose for which such tax was voted, and to no other purpose.   It must be conceded that the proposition to raise the sum for the construction of the building in question was not submitted to the electors of the city of Little Falls by its common council or by its authority. The election which was held was not authorized by the common council.   It was not held in accordance with the provisions of the charter, and therefore could have no binding force as against the city; so that the question is presented whether or not that fact is available to the defendant as a defense to this action.   We think it is not for the reason—First, because it was not pleaded in the defendant's answer, or the illegality of the contract in any manner asserted; and, second, because the money, as appears by the uncontradicted evidence, applicable to the discharge of the obligation incurred by the contract, had been raised and was in the treasury of the defendant for that purpose.   The defendant, having raised the money, presumably by taxation, to discharge such obligation, is not in a position to assert that such funds were procured by it illegally and without authority of law, whatever might have been the rights of a taxpayer in an action properly brought to test that question.   In the complaint it is alleged that the contract was made, was duly authorized, and recovery was asked

upon and by virtue of it. The answer of the appellant admits the making and execution by the parties thereto of a certain contract, a copy of which is annexed and marked "Exhibit A," and denies that any other or different contract or agreement was made or entered into. Exhibit A is the contract which is set forth and referred to in plaintiff's complaint. The answer in no manner alleges that the contract was invalid or was made without authority, and in no manner sets up the defense now urged by the appellant. We think, if the appellant wished to urge the illegality of the contract as a defense to this action, it should have pleaded such defense in its answer.

In Milbank v. Jones, 127 N. Y. 376, 28 N. E. 32, 24 Am. St. Rep. 454, the court said:

"This rule has been in force so long that it seems unnecessary to support it at this time by an extended reference to the decisions, and we shall therefore end this discussion by citing a few of the cases in which the courts of this state have said that a defendant, in order to avail himself of facts not appearing on the face of a contract to establish its invalidity, must plead it."

In May v. Burras, 13 Abb. N. C. 384, the court said:

"Where a defendant wishes to defeat a recovery by plaintiff, upon the ground that the contract upon which he is sued is illegal, the necessary facts must be alleged in the answer and proven upon the trial."

And at page 388 the court further said:

"Where a party needs the aid of the statute to show that it is illegal, he must plead it."

In Pavement Co. v. Monheimer, 41 Super. Ct. 184, the court said:

The invalidity of the contract cannot be raised "when the answer expressly admits the making and existence of the contract, and contains no allegations apprising the plaintiff that the nullity of the contract is meant to be relied upon."

Many other cases might be cited to the same effect. Indeed, the reason for the rule is so apparent that the citation of authority would seem to be unnecessary. The contract in suit was valid upon its face. The defendant admitted that the contract was made as alleged, and nothing was contained in the answer which could in the least apprise the plaintiff that the defendant intended to assert its invalidity upon the trial. No motion was made to amend the answer, and we think the defense that the contract was invalid because the proposition to raise the money to pay the expense of the building constructed was not submitted to the electors, as required by the charter, was not available to the defendant.

Did the architect in fact consent that Dove might subcontract the carpenter work; and, even if he did, does chapter 444 of the Laws of 1897 prohibit such subcontracting and render the original contract nonenforceable? The evidence shows that when Dove was with the members of the board he informed them and the architect that, if he got the contract, Butler would do the carpenter work. In fact, Butler, who was a practical carpenter, was present at the time, figuring upon the plans to ascertain what it would be worth to do the carpenter work. Neither the architect nor any member of the board made any objection when Dove stated that he intended to sub-

let that work.  On the contrary, it is apparent that all the parties, including the architect, understood that would be done.  Under those circumstances, the appellant cannot successfully urge the invalidity of the contract because such work was sublet.  During the entire construction of the building, covering a period of more than a year, the appellant's board and the architect knew that Butler & Benjamin were performing labor and furnishing materials for the building in question as subcontractors.  They were treated as such.  Partial payments were made to them upon estimates of the work done by them.  So far as appears, no complaint was ever made because the carpenter work was sublet until the parties entered upon the trial of this action.  The consent of the architect was in effect given; but, if it was not, the defendant is not in a position to urge the invalidity of the contract for that reason.  A party may not, with full knowledge of all the facts, have the benefit of work done and materials furnished by a subcontractor without objection, and then urge as an excuse for not paying for the same that the subcontract was not consented to by him.

Chapter 444 of the Laws of 1897 provides, in substance, that if any contractor to whom a municipal contract is let shall, without the previous written consent of the department or official awarding the same, assign, transfer, convey, sublet, or otherwise dispose of his contract, or his right, title, or interest therein, or his power to execute such contract, to any other person, the municipal corporation shall be relieved and discharged from any and all liability and obligation growing out of said contract to said contractor, and to the person, company, or corporation to whom he shall assign, transfer, convey, sublet, or otherwise dispose of the same.  The statute did not prohibit Dove from subletting the carpenter work involved in the contract in question.  The prohibition is against assigning, subletting, etc., the whole or the substantial part of a contract entered into with a municipality, so as to put it out of the power of the original contractor to perform the same.  The construction contended for by the appellant would require a contractor, in order to perform a contract entered into with a municipality involving a variety of work, to do substantially all of it by day's labor.  In case of a contract for the erection of a building complete, the contractor could not contract for the steam heating or plumbing, or for the painting or tinning; but every part which he himself could not perform must be done by day's labor.  We find no authority bearing upon this precise proposition; but we think the construction of the statute contended for by the appellant is unreasonable, and such as was not intended by the legislature in the passage of the act.  It is evident that the act was passed for the purpose of preventing a sort of brokerage in city contracts,— to prevent a party from obtaining a contract from a municipality, and then assigning it and the whole of it to some one else, and thus relieve himself of responsibility in respect thereto.  In the case at bar the usual custom was pursued, the legality of which, so far as we are aware, has never been questioned, to wit:  In case a contract is awarded by a city to a practical mason for the erection of a brick building, he does the mason work, builds the foundation, and erects

the walls, and sublets the carpenter work to a practical carpenter, the plumbing work to a plumber, and so on, always retaining, however, a substantial part of the contract to be performed by himself, and all to be done under his direction and supervision, for the performance of every detail of which he is accountable to the municipality. The fact that the carpenter work upon the building in question was subcontracted does not, under the facts disclosed by the evidence in this case, constitute a defense which is available to the appellant.

The learned counsel for the appellant urges with much earnestness that the findings of the learned referee to the effect that the contractor and the subcontractor proceeded with the work in a proper manner and in good faith until the 30th day of August, 1899, when the appellant without cause took possession of said building, and refused without cause to allow them to complete the same; that at that time the mason work was substantially completed and the carpenter work nearly completed; that the appellant was responsible for the noncompletion of the building at the time specified in the contract; and that said contractors were at all times ready and willing to perform said contracts,—are not supported by evidence. It is somewhat singular, and perhaps significant, that the appellant gave no evidence upon any question involved in the findings of the learned referee. No witness was called by or on behalf of the appellant, and therefore the evidence given on behalf of the plaintiff stands wholly uncontradicted. The case seems to have been tried upon technicalities, and not upon the merits. The evidence of performance is not altogether satisfactory. Precisely what was done and what was omitted in the construction of the building does not definitely appear. . The general statement is made by the witnesses called by the plaintiff that the work was substantially completed. On cross-examination it was shown that certain items of work were unfinished; but whether they were trivial or important the appellant did not attempt to show, and it does not appear. The same may be said with reference to the action of the appellant in ejecting the contractors from the building and in declaring the contract forfeited. The plaintiff's witnesses state, in effect, that such action on the part of the city was entirely without excuse, and through no fault of theirs; that the building was not fully completed by the 1st day of August solely through the fault of the city, and because it failed to properly heat the building, which was necessary in order to enable them to perform their work; and that solely as a result of such failure the completion of the building was delayed at least six weeks. Not a word of proof is offered by the appellant to controvert the statements made by the witnesses called by the plaintiff. No explanation is offered for the action on the part of the city in ejecting the contractors from the building. Certainly a defense to plaintiff's alleged cause of action was not established simply because it appeared that the building was not completed within the time specified in the contract. If the failure to complete was caused by the city or by its agents, the contractors were relieved from responsibility. Smith v. Wetmore, 167 N. Y. 234, 60 N. E. 419. Upon this branch of the case it need only be added that, after a careful examination of

the evidence, we are satisfied that it was sufficient to support the findings of the referee, especially in view of the fact that the appellant offered no proof upon the issues involved.

The same may be said in respect to the findings of the referee relating to the amount of work done upon the building and its value, and as to the value of the work done and materials furnished by the plaintiff, by Butler & Benjamin, and by Benjamin as surviving partner, and the amount and value of the materials made ready for use by them, but not actually used in the construction of the building, through the fault of the appellant. With reference to those matters the evidence is general,—is not explicit; but again no effort is made by the defendant to contradict it, although all the facts were within its knowledge. The defendant knew in just what condition the school building was, what work had been done, what materials had been furnished, and what such materials were worth; knew what remained undone, and what materials had not been furnished and which were called for by the contract, and their value; knew what it would cost to have completed the building according to the contract; but it did not deem it important to disclose to the referee what was within its knowledge with reference to those matters, and we must therefore assume that it knew of no facts which would aid it upon the trial of the issues involved. The findings of fact by the referee, being supported by evidence, should not be disturbed upon this appeal.

The production of the architect's certificate showing the amount due to the contractor was not essential, in order to entitle the plaintiff to maintain this action. The appellant having declared the contract forfeited, and the performance of the work thereunder abandoned, and having taken possession of the building for the purpose of completing the same, it was not necessary for the plaintiff to furnish the certificate of the architect. Campbell v. Coon, 149 N. Y. 556, 44 N. E. 300, 38 L. R. A. 410.

Counsel contends that the referee committed reversible error in permitting the case to be reopened upon plaintiff's motion after the evidence had been closed, and to receive evidence in chief. The motion to reopen was, under all the circumstances, addressed to the sound discretion of the referee. Wright v. Reusens, 133 N. Y. 298, 31 N. E. 215. We think the discretion was properly exercised in this case.

Our conclusion that the board of education of the city of Little Falls is, so far as the questions involved in this case are concerned, simply an agency of the city, and was such agent in the erection of the building in question, renders it unnecessary to consider the exceptions which were taken upon the theory that the acts of the board were not binding upon the city, and that proof of transactions had with the board was inadmissible as against the city. The other exceptions to which attention has been called do not present reversible error. It follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except DAVY, J., not voting.