HALLMARK SYNTHETICS CORP., Appellant, *v.* SUMITOMO SHOJI NEW YORK, INC., Respondent.

First Department, December 20, 1966.

*Irwin Klein* for appellant.

*Stewart W. Richards* of counsel (*H. Kenneth Haller* and *John C. McGuire* with him on the brief; *Beer, Richards & Haller,* attorneys), for respondent.

STEVENS, J.  Plaintiff appeals from an order entered June 20, 1966, granting defendant's motion for partial summary judgment, and from the judgment entered thereon June 29, 1966.

The order and judgment appealed from granted partial summary judgment to defendant to the extent of dismissing the first and fourth causes of action of the complaint.  In the first cause plaintiff sought damages for defective goods delivered pursuant to a series of contracts, a schedule of which is annexed to the complaint.  In the fourth cause plaintiff sought damages for a short or insufficient yield under certain contracts enumerated in schedule C attached to and made a part of the complaint.

The answer and defenses consisted of denials and pleading a general release.  Special Term concluded such release covered the claims asserted in the first and fourth causes and was a sufficient defense.

The issue is whether the general release executed by plaintiff warrants and supports the order and judgment of dismissal of the first and fourth causes of action.

By letter dated October 20, 1962, from defendant to plaintiff, defendant wrote, in part: "We have heretofore sold you vinyl film under contracts between us No. 27404 dated March 19, 1962 and 27410 dated March 22, 1962.  You have claimed that you have suffered loss by virtue of quality defects in *that* film.  You and we have discussed settlement of your claims against us for *such* alleged loss and together have reached an agreement to settle *those* claims as follows:" (emphasis added).  Then followed certain credit allowances to be given.  The letter continued:

"Upon your receipt of this letter, you will execute and deliver to us a General Release, in the form of that attached hereto, releasing us from all claims of any and every kind which you may have against us.

"You will indemnify us against and hold us harmless from all losses, costs and damages of every kind, including attorney's fees, which we may hereafter suffer by reason of any claim made or action brought against us because of *alleged defects* in the vinyl film *heretofore described in this letter.*" (Emphasis supplied.)

The letter continues with further reference to vinyl film "heretofore sold by us to you *as aforesaid*", and then refers to payment for all goods delivered under contracts 27404 and 27410, against which credit memos will be issued for goods returned under such contracts.

A general release in the form requested was executed bearing the same date of October 20, 1962.

After joinder of issue in this action defendant moved for partial summary judgment dismissing the first and fourth causes of action, attaching as exhibits to its moving affidavit a copy of the general release and a "copy of the settlement letter, dated October 20, 1962, pursuant to which the general release was executed." Defendant asserts in its affidavit the claims referred to in the first and fourth causes occurred prior to October 20, 1962, and the general release constituted a release of such claims.

Plaintiff in its opposing affidavit states that as of October 20, 1962, the amount of its customers' claims by reason of defective merchandise received from defendant under contracts No. 27404 and No. 27410, was in excess of $23,000. On October 20, 1962, a conference was called and held at defendant's office for the sole and exclusive purpose of adjusting plaintiff's claims under such contracts. Defendant's attorneys had prepared both the letter of settlement and the release. Nothing else, according to defendant, was discussed except the claims under the two contracts which defendant agreed to settle for $23,000. Plaintiff asserts it complained about the broad language of the release and of paragraph "2" of the letter which requested a general release and contended there should be clarification to indicate that only claims under the two contracts were being released. It was thereupon assured by defendant that was the sole purpose and intent of both the letter and the release and "[i]n reliance thereon" plaintiff "executed the release and accepted the letter."

In support of its position plaintiff attached to its affidavit in opposition copies of correspondence received from defendant dated January 29, 1963, referring to possible adjustments under debit memo Nos. 141 and 151, dated September 21, 1962, and also letters dated in April 1963, and even later, referring to other debit memos up to No. 151, all claims prior in time to the date

of October 20, 1962. Further, that the defendant subsequently issued credits to plaintiff for other claims arising under prior contracts.

An affidavit from one Baum, describing himself as a then sales representative of defendant, present at the October 20, 1962, meeting on behalf of defendant and the person who asserts he was responsible for the sale to plaintiff of the vinyl plastic under contracts Nos. 27404 and 27410, is attached to plaintiff's affidavit in opposition to defendant's motion, and this affidavit supports in every respect plaintiff's version of what transpired on that occasion.

Defendant denied that Baum was its sales representative and described him as merely a broker present, and also denied the purpose and effect of the communications. There is no denial of the simultaneous execution.

The letter of settlement and the general release were prepared by defendant. The letter of settlement in the paragraph preceding the request for a general release, and in subsequent paragraphs following upon such request refers only to two (2) specific contracts. Certainly an ambiguity exists as to the purpose, meaning and intent of the release. The circumstances surrounding the execution, and the facts as alleged, indicate that the letter of settlement and the release are to be read and construed together (cf. *Nau* v. *Vulcan Rail & Constr. Co.*, 286 N. Y. 188), or at least, that there does exist an ambiguity. " The general rule is that where a release contains a recital of a particular claim, obligation or controversy and there is nothing on the face of the instrument other than general words of release to show that anything more than the matters particularly specified was intended to be discharged, the general words of release are deemed to be limited thereby " (*Mitchell* v. *Mitchell,* 170 App. Div. 452, 456; *Rubenstein* v. *Rubenstein,* 109 N. Y. S. 2d 725, 732, affd. 279 App. Div. 1073, affd. 305 N. Y. 746, cert. den. 346 U. S. 939; cf. *Matter of Schaefer,* 18 N Y 2d 314).

" The purpose of a written agreement must be ascertained from the instrument itself, if it is possible to do so, but where there are additional writings relating to the subject, they may be examined to ascertain the intention of the parties at the time of the making of the contract. Extrinsic matters such as letters and other instruments may be construed as a part of a contract where they are referred to therein or annexed thereto, or where it appears they were intended to be a part of the contract " (10 N. Y. Jur., Contracts, § 211; cf. *Rodgers* v. *City of New York,* 222 App. Div. 564, 568; *Engineer Co.* v. *Herring-Hall-Marvin Safe Co.,* 154 App. Div. 123; *Malin* v. *Ward,* 16 A D

2d 850, 21 A D 2d 926). In the latter citation of *Malin v. Ward* the court observed: '' Parol evidence is admissible to identify the subject matter to which the writing relates if any doubt or uncertainty is present ''. That case involved two writings and was an action for specific performance of a contract for the sale of real estate. The principle, however, is equally applicable here. Plaintiff here denies that it ever executed a release running to all claims beyond the two contracts specified and, in light of the settlement letter and differing versions, the issue should be tried out (*Farrington v. Harlem Sav. Bank,* 280 N. Y. 1).

In *Lucio v. Curran* (2 N Y 2d 157) a general release operated to release all parties, including nonsignatories. Under the facts and circumstances of that case the court concluded plaintiff's admissions were made deliberately, the language was clear, and a suit later brought was dismissed. '' Although the effect of a general release, in the absence of fraud or mutual mistake, cannot be limited or curtailed [cases cited], its meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given. Certainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of '' (*Cahill v. Regan,* 5 N Y 2d 292, 299; cf. *Oxford Commercial Corp. v. Landau,* 16 A D 2d 218, 220 [dissenting opn.], revd. 12 N Y 2d 362). '' A release may be in any form of words, but general words of release may be controlled by recitals and by context showing that unless the words of release are so restricted the object of the writing will be frustrated.'' The comment which follows the above points out '' as in the case of other documents, so in regard to releases, rules of construction afford merely a general guide to assist the court in determining the meaning of the document under the circumstances existing when delivered.'' (Restatement, Contracts, § 403.) A triable issue of fact exists here as to the purpose, meaning and intent of the release.

The order and judgment appealed from should be reversed on the law and the motion for summary judgment denied, with costs and disbursements to appellant.

STEUER, J. (dissenting). The basis of dissent is the factual situation presented by the record rather than any disagreement as to the applicable law. Concededly, the plaintiff was aware of the inclusive terms of the release and of their effect. Plaintiff's officer complained about them and he executed the release only when the defendant insisted that unless a release in that form was

given there would be no settlement. While it is true that, of the several contracts between the parties upon which deliveries had been made, difficulties had arisen in only the two which were the subject of claims, both parties were aware of the possibility of other claims. True, this possibility was not the subject of specific negotiation, but that plaintiff was cognizant of it cannot be disputed. Plaintiff's protests that the terms of the release were too broad could have reference only to possible claims on the other contracts. That he capitulated and yielded these claims is the only possible interpretation of the facts.

There are no elements of fraud or overreaching. Nor is it a case where one or both parties lacked any intent to dispose of anything other than the controversy immediately before them. On the contrary, it appears without contradiction that the cession of all claims, known or unknown, was a condition to the agreement of settlement. The fact that the compensation offered related solely to the two contracts in suit does not lessen the effect of the general terms of the release, nor does it, of itself, raise an issue of the parties' intent (*Lucio* v. *Curran,* 2 N Y 2d 157).

BOTEIN, P. J., and CAPOZZOLI, J., concur with STEVENS, J.; STEUER, J., dissents in opinion, in which McNALLY, J., concurs.

Order and judgment reversed upon the law, with $50 costs and disbursements to the appellant, and defendant-respondent's motion for summary judgment is denied.