LANE CONSTRUCTION CORPORATION et al., Respondents, v WINONA CONSTRUCTION COMPANY, INC., Appellant.

Third Department, October 23, 1975

*Kramer, Wales & McAvoy (Donald W. Kramer* of counsel), for appellant.

*Hinman, Howard & Kattell (Charles F. Fish* of counsel), for respondents.

SWEENEY, J. P. In December, 1963 plaintiff Lane Construction Corporation (hereinafter Lane) entered into two contracts with the State of New York for the construction of a highway in the Binghamton area. On December 4, 1963 defendant Winona Construction Company (hereinafter Winona) submitted a written bid to supply Lane with dump trucks and drivers at $10 an hour per truck. Trucks and drivers were first supplied to Lane by Winona on December 26, 1963. On December 27, 1963 Winona and Lane signed an agreement in letter form providing that because Winona was not a subcontractor approved by the State, the truck drivers furnished by Winona would be carried on the Lane payroll and Lane was to act as Winona's agent in all matters relating to the payment of wages to such employees. Winona also agreed to carry workmen's compensation insurance on its employees and to furnish Lane with a certificate showing such coverage. The agreement also contained the following clause: "We agree to exonerate, indemnify, save harmless and defend your corporation from and against all claims and acts based upon or arising out of damage or injury (including death) to persons or property caused directly or indirectly by, or sustained in connection with, any of our acts or omissions or the acts or omissions of our agents, servants, or employees in the performance of work hereunder."

Winona owned several trucks and hired others to meet Lane's daily demands. All of the drivers of the trucks were carried on Lane's payroll and Lane deducted from the $10 per hour per truck all wages and benefits paid by it to the drivers. This procedure was followed from December 26, 1963 to the end of the contract some time in November of 1964. Lane received from Winona a performance bond executed on May 6, 1964. By letter written by Lane on June 5, 1964 and accepted by Winona on June 8, 1964, a final formalized agreement was entered into. This letter referred to Winona's proposal of

December 4, 1963, but not to the letter agreement of December 27, 1963. It contained a paragraph stating that Winona would save harmless and indemnify Lane from and against any damages, claims or expenses which Lane might suffer because of Winona's operations in the contract. Thereafter, Winona furnished a certificate of insurance dated July 24, 1964, stating specifically that it included the contractual agreement dated June 5, 1964, reading "At all times save harmless and indemnify The Lane Construction Corporation from and against any damages, claims or expenses which Lane may suffer because of your [Winona's] operations in this contract."

In August and September of 1964 there were three accidents which occurred on the State highway construction job: (1) injuries resulting in the death of one Archibald, the driver of a truck leased to Winona; (2) injuries to one Guglielmini, the driver of a truck leased to Winona; and (3) injuries to one Emig, a Lane employee, injured when he was struck by a truck owned by Winona and driven by a Winona driver. As to the Archibald and Guglielmini cases, the Workmen's Compensation Board found that they were general employees of Winona and specific employees of Lane and apportioned the awards between Lane's carrier and Winona's carrier on a 50-50 basis. As to the Emig accident, the board found that Emig was a Lane employee and Lane's carrier was required to pay the entire award.

In this action, Lane and its carrier, plaintiff Liberty Mutual Insurance Company (hereinafter Liberty Mutual), seek indemnification for payments made pursuant to these awards and reimbursement for legal expenses incurred in defense of the Archibald and Guglielmini cases. Following trial, without a jury, the trial court granted judgment to the plaintiffs on all four causes of action.

On this appeal the defendant, Winona, raises several issues. First, it contends that the trial court erred in finding that the instrument dated December 27, 1963 was a part of the contract made between Lane and Winona, maintaining that the letters of December 4, 1963 and June 5, 1964 constitute the sole agreement between the parties. We do not agree. The letter of December 27, 1963 must be construed along with the June 5, 1964 letter. Although the agreement of December 27, 1963, which relates to the subject matter of the contract, was not specifically mentioned in the June 5, 1964 letter, the letter

refers to the indemnity agreement which by implication can refer only to the December 27, 1963 agreement. Both parties relied and acted upon that agreement throughout the life of the contract. The record reveals that without it, Lane would not have permitted Winona to operate on the job. The three letters were intended "to effectuate the same purpose and formed a part of the same transaction." *(Nau v Vulcan Rail & Constr. Co.,* 286 NY 188, 197; see, also, *Hallmark Synthetics Corp. v Sumitomo Shoji, New York,* 26 AD2d 481, 484.)

Next, defendant urges that the court erred in refusing to admit the entire workmen's compensation record; that since such record shows that the contractual question, including the matter of indemnity, was litigated before the board, the result in the workmen's compensation cases precludes a recovery in this action. The doctrine of *res judicata* has no application to issues not within the jurisdiction of an administrative agency. We conclude, as did the trial court, that the board had no jurisdiction to determine the legal effect of the indemnity contract between the parties, and, therefore, the record was properly refused.

Defendant also asserts that no indemnity is due from it to Lane for the Emig compensation award since there is no evidence that the truck driver who struck Emig causing his injuries was actually employed by Winona. The facts and circumstances concerning his employment, however, were similar to those of Archibald and Guglielmini. The board determined that the truck drivers were general employees of Winona, an issue which defendant had a full and fair opportunity to litigate at the compensation hearings. Since it was within the jurisdiction of the board to determine the nature of employment, defendant is collaterally estopped from asserting otherwise. *(Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65.) The trial court correctly held that plaintiffs are entitled to indemnification for the Emig award.

Defendant further contends that the parties settled the Archibald and Guglielmini compensation cases on an equal division basis and that plaintiffs agreed to forego enforcement of the indemnification agreement; that in reliance on such agreement, defendant was induced to waive its appeal in the compensation cases; and plaintiffs should be estopped from denying such settlement. On this record, we find no evidence of any promise or representation by plaintiffs to relinquish their rights under the indemnity agreement. Nor do we find

sufficient proof of defendant's reliance on any such agreement in its not appealing the decisions of the Workmen's Compensation Board. This affirmative defense was properly denied by the trial court.

Defendant's next contention, that the contract between Lane and Winona was in violation of section 138 of the State Finance Law and, thus, contrary to public policy, is also without merit. In the instant case, Lane assigned to Winona only an insignificant part of its contract with the State. Section 138 was enacted to prevent a party from obtaining a public contract and then subletting the entire contract or a substantial portion of it so that the general contractor does not perform it. *(Ocorr & Rugg Co. v City of Little Falls,* 77 App Div 592, affd 178 NY 622.) Here, the evidence establishes that Lane did not relinquish its duty of supervision under its contracts with the State, but, in fact, retained total control and responsibility. In our opinion, the statute does not apply.

We come now to a consideration of plaintiffs' action for counsel fees incurred in defense of the workmen's compensation cases. Initially, defendant argues that the trial court erred in quashing its subpoena duces tecum for production at the trial of all records which showed the actual work performed by Liberty Mutual's attorneys in the compensation cases. The work product immunity under subdivision (c) of CPLR 3101 is absolute. In our view, the material requested was the attorneys' work product prepared by them in preparation for litigation containing notes, analysis and trial strategy. From the record, it appears that plaintiffs produced all pertinent documents kept in the regular course of business. Under these circumstances, we conclude that plaintiffs did not waive their attorneys' absolute work product by bringing an action for attorneys' fees.

Finally, defendant maintains that since the major part of the legal services rendered in the compensation cases was involved in attempting to enforce the indemnity agreement, plaintiffs were required to establish the extent to which the legal services were rendered in the defense of the compensation cases and the extent to which they were rendered in attempting to enforce the indemnity agreement. We disagree. The record demonstrates that an itemized attorneys' bill was submitted to Liberty Mutual setting forth disbursements and fees for legal services rendered in the compensation cases. The bill was paid by Liberty Mutual on December 4, 1968. The

present action on the indemnification agreement was not commenced until July 31, 1969. Furthermore, the service records of each attorney who worked on plaintiffs' defenses of the workmen's compensation cases over a four-year period were produced. On examination of these records, we conclude that all of these services were rendered in connection with the defense of the compensation cases. Defendant, by its indemnification agreement, agreed to defend and indemnify the expenses for such legal services and disbursements.

The judgment should be affirmed, with costs.

KANE, KOREMAN, LARKIN and REYNOLDS, JJ., concur.

Judgment affirmed, with costs.