■ NICHOLAS T. SBARRA, Respondent, v THEODOSIS J. To-

TOLIS, Appellant. [594 NYS2d 868] —Harvey, J. Appeal from an order of the County Court of Broome County (Mathews, J.), entered October 4, 1991, which affirmed a judgment of the City Court of the City of Binghamton in favor of plaintiff.

Defendant and his now-deceased partner, Richard Kelly, owned a building located in Endwell, a community in the Town of Union, Broome County. In March 1984, defendant and Kelly leased the property to Victor Di Dominick, Joseph Ferraro and Brenda Sue Nutter (hereinafter collectively referred to as the named tenants) so that those persons could operate a "Magic Prints Photo Finish" store. The lease was for five years commencing April 15, 1984 and ending March 31, 1989, but it contained an option to extend the lease for an additional five years. There is no dispute that the above-mentioned parties were brought together through the auspices of plaintiff's brokerage company as evidenced by the March 1984 commission agreement that is the subject of this proceeding. This agreement states that plaintiff was the procuring broker for Kelly and defendant and the named tenants, and that Kelly and defendant agreed to pay plaintiff semiannual brokerage fees in a set schedule. As is pertinent to this action, the agreement states the following:

"In the event landlord transfers title of premises to tenant or assignee or sub/lessee, it shall be deemed that the options have been exercised and commissions are due thereon per schedule below.

"Year 1, 1984 starts 4/15/84 $414.00, payable $207.00 on 4/15/84 and 10/15/84

"Year 2, 1985 $414.00, payable $207.00 on 4/15/85 and 10/15/85

"Year 3, 1986 $414.00, payable $207.00 on 4/15/86 and 10/15/86

"Year 4, 1987 $450.00, payable $225.00 on 4/15/87 and 10/15/87

"Year 5, 1988 $450.00, payable $225.00 on 4/15/88 and 10/15/88

"If option exercised

"Year 6, 1989 $504.00, payable $252.00 on 4/15/89 and 10/15/89

"Year 7, 1990 $504.00, payable $252.00 on 4/15/90 and 10/15/90

"Year 8, 1991 $504.00, payable $252.00 on 4/15/91 and 10/15/91

"Year 9, 1992 $540.00, payable $270.00 on 4/15/92 and 10/15/92

"Year 10, 1993 $540.00, payable $270.00 on 4/15/93 and 10/15/93".

Subsequently, on December 26, 1985, the building was sold to, and the lease was ultimately assigned to, Eugene Brozetti and Warren Hill. In September 1987, the named tenants sold their interest in Magic Prints Photo Finish to Frank Hornick, Jr., who then became the building's tenant. Around that time, Hornick sent a letter to Hill formally exercising the option in the lease to extend the lease for another five years. In the meantime, defendant continued paying plaintiff the commissions contained in the above-listed schedule until November 1987, when defendant informed plaintiff that he considered his assignees, Brozetti and Hill, to now be responsible for paying the commission to plaintiff. However, because Brozetti and Hill specifically only took assignment of the lease and not the March 1984 commission agreement, they declined to pay.

Subsequently, plaintiff commenced this action seeking to recover the unpaid installments of the commission agreement, including those listed beyond the required five-year lease term. Following a hearing in Small Claims Court, City Court ruled that the commission agreement described two different events pursuant to which defendant would become obligated to pay the installments contained in the commission agreement schedule. The first event was described within the schedule itself. City Court determined that the phrase "If option exercised" before the scheduled four years 6 through 10 referred to the five-year extension option in the lease which, if exercised, would trigger the remainder of the commission payments. The second event was set forth in the paragraph beginning "In the event landlord", and effectively stated that if defendant sold the building to the named tenants or their successors, defendant would be obligated to pay the remainder of the commission, the same as if the option to renew had actually been exercised. City Court ruled that both events had occurred in this case and held defendant liable for the payments.

Defendant then appealed this decision to County Court. In that court's decision and order, County Court basically agreed with City Court's construction of the commission agreement but held that defendant was liable for the commissions solely because the named tenants' assignee, Hornick, exercised the option to extend the lease. County Court disagreed that the second triggering event described in the commission agreement was fulfilled because neither the named tenants nor

their assignee, Hornick, ever purchased the premises.* This appeal by defendant followed.

We affirm. Initially, we must disagree with defendant's contention that County Court erred in looking to the March 1984 lease in construing the commission agreement. While normally the purpose of a written agreement should be gleaned from the instrument itself if possible, it is permissible to examine any additional writings relating to the subject where necessary in order to ascertain the intention of the parties at the time the contract was made *(Hallmark Synthetics Corp. v Sumitomo Shoji N. Y.,* 26 AD2d 481, 484, *affd on opn below* 20 NY2d 871; *see, Lane Constr. Corp. v Winona Constr. Co.,* 49 AD2d 142, 146; *Engineer Co. v Herring-Hall Marvin Safe Co.,* 154 App Div 123, 125). In other words, "[e]xtrinsic matters such as letters and other instruments may be construed as part of a contract where they are referred to therein or annexed thereto" (22 NY Jur 2d, Contracts, § 226, at 74). Here, it is apparent that the language in the commission agreement referring to "options" and the exercising of options makes no sense standing alone unless one also looks to the contemporaneous lease agreement to ascertain what options were available. Notably, while defendant argued at the hearing that there was an option in the agreement allowing the named tenants an opportunity to buy the building themselves, an examination of the lease shows no such option. Instead, the only option in the lease was for the tenants to extend the lease another five years.

Accordingly, reading the lease and commission agreement together, it becomes apparent that the parties did contemplate two situations whereby the additional commission fees would be paid: (1) if the lease was renewed or (2) if the tenants or their successors purchased the property, in which case the renewal option would be "deemed" to have been exercised or the parties would act as if it had been and the commissions would be paid accordingly. As noted by County Court, such a construction is the only way the "deemed" language in the written paragraph makes sense. If the phrase "If option exercised" referred to the sale of the premises to the named

---

* City Court ruled that defendant's assignment to Brozetti and Hill triggered the second event. We note that defendant continues to argue strenuously on appeal his disagreement with City Court's conclusion on this point. However, as mentioned, County Court agreed with him that this condition of the agreement was not fulfilled; therefore, the only issues to be resolved are whether the agreement was properly interpreted and applied by County Court.

tenants as argued by defendant, then such conveyance would not need to be "deemed" anything. Consequently, we find County Court's construction of the contract language appropriate.

Turning now to whether County Court was correct in concluding that the renewal option was properly exercised, we are in similar agreement. Defendant raises for the first time on appeal his argument that only the named tenants could renew the lease, as opposed to Hornick. In fact, County Court specifically noted in its decision that defendant did not contest the fact that Hornick had become the tenant and that he had properly exercised the option provision in the lease. Nevertheless, even if this issue was properly before us, we would still not find in defendant's favor based on the record. It is undisputed that Brozetti and Hill, as defendant's assignees, accepted the renewal of the lease from Hornick, the named tenants' assignee. Accordingly, defendant has no standing to complain and his invocation of a clause in the lease not allowing assignment of the lease without permission of the landlord is irrelevant. In any event, the name of the tenant who actually exercised the lease is unimportant because the point of the commission agreement was to recompense plaintiff for arranging what turned out to be a valuable 10-year lease. Although defendant seems to feel he was treated unfairly, we cannot agree. He presumably feels this way solely because he sold his interest in the property, a choice that was his to make. It can be assumed, however, that the value of the leasehold was included in the price of the sale. Moreover, the fact that Brozetti and Hill specifically declined to take assumption of the commission agreement also indicates a possibility that defendant's continued responsibility for the commission fees was part of the consideration of the sale to Brozetti and Hill.

Yesawich Jr., J. P., Crew III and Mahoney, JJ., concur. Ordered that the order is affirmed, with costs.