EASTERN FISH COMPANY; Insurance, Company of North America, Plaintiffs,

v.

SOUTH PACIFIC SHIPPING CO., LTD., d/b/a Ecuadorian Line; South Pacific Shipping Co., Ltd.; Ecuadorian Line, Defendants.

No. 99 CIV. 2851(RMB).

United States District Court, S.D. New York.

June 23, 2000.

David L. Mazaroli, New York City, for Plaintiffs.

Elizabeth Smith, Mahoney & Keane, L.L.P., New York City, for Defendants.

Vincent J. Bochis, Davis Saperstein & Salomon, PC, New York City, for Claimant.

## *ORDER*

BERMAN, District Judge.

This action arises from the alleged non-delivery, shortage, and loss of 1511 cartons of frozen shrimp. (Mazaroli Aff. ¶ 2; Smith Aff. ¶ 2.) Plaintiffs Eastern Fish Co. ("Eastern Fish") and Insurance Company of North America (collectively, "Plaintiffs") contend that the frozen seafood was lost on or about April 21, 1998 en route to the port of Guayaquil, Ecuador and now seek $140,000.00 in damages. Plaintiffs further contend that if a bill of lading had been issued, this Court would have been designated therein as having exclusive jurisdiction over this dispute.[1] Defendants South Pacific Shipping Co., Ltd. d/b/a Ecuadorian Line, Inc. ("SPS/ELI"), South Pacific Shipping Co., Ltd. ("South Pacific"), and Ecuadorian Line, Inc. ("Ecuadorian Line") (collectively, "Defendants") contend that pursuant to Paragraph 15 of (Appendix 1

---

1. It is undisputed that, in fact, no separate bill of lading covering the lost cargo was ever issued and/or executed. Plaintiffs argue that it was, however, their practice to enter into bills of lading containing a clause (in Paragraph 16) conferring jurisdiction on this Court. See discussion at page 238 below.

to) the Service Contract, dated March 1, 1997, between Eastern Fish and SPS/ELI ("Service Contract")—a document which was in fact executed—a controversy or claim arising out of or relating to the Service Contract, such (according to Defendants) as the dispute at bar, shall be referred to arbitration. **For the reasons set forth below, Defendants' motion to dismiss these proceedings is granted.**

## I. *Background*

On March 1, 1997, Defendant SPS/ELI entered into the Service Contract with Eastern Fish providing for the carriage of ten containers of frozen shrimp (and fish) from Ecuador Base Ports to North Atlantic and Florida Base Ports.[2] (Halaszynski Aff. ¶ 2.) The usual and customary practice was for each shipment to be carried from the supplier's premises to the port of loading by a subcontracting trucking company, hired and paid by Defendant Ecuadorian Line. (Bloom Dec. ¶ 3.) The cargo would then be loaded on a ship for transport by sea. Nine of the ten containers to be delivered under the Service Contract arrived in New York without incident. (Bloom Dec. ¶ 5.)

On April 21, 1998, at the premises of Langostino S.A., a shrimp exporter in Machala, Ecuador, the cargo of shrimp in question was loaded on behalf of Eastern Fish in Container NPDU400595–8. (Bloom Dec. ¶ 5; Halaszynski Aff. ¶ 4.) While the Container was being transported by the trucking company from Langostino's premises to the port of Guayaquil, Ecuador, it was hijacked by ten armed and masked men. (Bloom Dec. ¶ 5; Smith Aff. ¶ 3.) **A bill of lading was never issued for this Container.** (Bloom Dec. ¶ 6.) On April 19, 1999, Plaintiffs filed a complaint for damages (based upon contract and tort claims) against Defendants as common carriers and/or bailees. (Comp.¶ 9.) On November 2, 1999, Defendants moved to dismiss or stay these proceedings pending arbitration arguing that arbitration (rather than litigation) under the Service Contract was the appropriate means of dispute resolution.[3]

## II. *Analysis*

### A. *Arbitration Generally*

■ Arbitration as a means of resolving disputes is well established and broadly favored. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("It has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability... "); *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir.), *cert. dismissed*, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991) ("Federal policy strongly favors arbitration as an alternative dispute resolution process"). A court, in deciding whether a stay should be granted, must first determine whether the parties agreed to arbitrate and then determine whether the scope of the agreement encompasses the claim(s) being asserted. *See United States Fire Ins. Co. v. National Gypsum Co.*, 101 F.3d 813, 816 (2d Cir.1996) (citing *Progressive Casualty Ins. Co. v. C.A. Reasegura-*

---

**2.** Although the contract was amended several times, the changes are not material to this action. (Halaszynski Aff. ¶ 3.)

**3.** A motion such as the instant motion to dismiss or stay a proceeding pending arbitration is governed by the Federal Arbitration Act ("the Act"), codified at 9 U.S.C. §§ 1–14, which states:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

The Act further provides that written provisions to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2.

*dora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir.1993)); *Genesco Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir.1987); *Netherlands Curacao Co. N.V. v. Kenton Corp.,* 366 F.Supp. 744, 746 (S.D.N.Y.1973) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

### Agreement to Arbitrate: Service Contract

■ "Under general contract principles, a party is bound by the provisions of a contract that he signs unless he can show special circumstances that would relieve him of such an obligation." *Genesco,* 815 F.2d at 845; *see also Coleman v. Prudential Bache Securities, Inc.,* 802 F.2d 1350, 1352 (11th Cir.1986) (per curiam); *N & D Fashions, Inc. v. DHJ Industries, Inc.,* 548 F.2d 722, 727 (8th Cir.1976). Eastern Fish entered into the Service Contract[4], which, as noted, contained the following (arbitration) clause in Appendix 1, Paragraph 15:

"The parties hereto agree that any controversy or claim arising out of or relating to this Service Contract or the breach thereof, shall be referred to and finally resolved by arbitration in the City of New York, New York, in accordance with the MARITIME ARBITRATION RULES of the SOCIETY OF MARITIME ARBITRATORS..." (Halaszynski Aff. Ex. 1 at 4.)

The question is not "whether there was subjective agreement as to each clause in the contract, but on whether there was an objective agreement with respect to the entire contract." *Genesco,* 815 F.2d at 846; *see also N & D Fashions,* 548 F.2d at 727. **By entering the Service Contract, Eastern Fish clearly agreed to arbitrate.**

### Scope of Agreement

Plaintiffs contend that the Service Contract is not a contract of carriage because, among other things, it relates to volume commitments, service commitments, and

rates. (Bloom Dec. ¶ 7.) Thus, Plaintiffs argue that the terms and conditions of the Service Contract do not apply to the lost (shrimp) cargo. (Bloom Dec. ¶ 7.) Defendants assert that the Service Contract is clearly applicable and governs the (shrimp) shipment at issue. (Defs.' Reply Mem. at 5.)

■ The Court believes that the Service Contract encompasses Eastern Fish's lost shrimp claim. Paragraph 1 in Appendix 1 states that "the terms of the Service Contract shall apply to shipments by the Shipper of the commodities... hereto carried by the Carrier," (Halaszynski Aff. Ex. 1 at 2), including, in the Court's view, the cargo of shrimp that was never delivered.

"With a healthy regard for the federal policy favoring arbitration... the Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "Arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.,* 745 F.2d 190, 194 (2d Cir.1984) (quoting *Wire Service Guild v. United Press Int'l,* 623 F.2d 257, 260 (2d Cir.1980) (quoting *International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. General Elec. Co.,* 406 F.2d 1046, 1048 (2d Cir.1969))); *see also AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. 1415 (1986). Furthermore, courts consistently have construed the "arising out of or relating to" language in arbitration clauses as all encompassing. *See Collins & Aikman Products Co. v. Building*

---

**4.** The parties signed the Service Contract on or about February 26, 1997 which became effective on or about March 1, 1997.

*Systems, Inc.,* 58 F.3d 16, 20 (2d Cir.1995) (clause submitting to arbitration " '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause."); *Pervel Industries, Inc. v. TM Wallcovering, Inc.,* 871 F.2d 7, 8–9 (2d Cir.1989) (clause providing for arbitration of "any controversy 'relating to' " a purchase and sale contract broad enough to cover claims stemming for an alleged collateral agreement to provide plaintiff with an exclusive distributorship). **In the present case, the Court concludes that Service Contract clearly encompasses the non-shipment of frozen shrimp.**

### B. *Bill of Lading*

As noted, Plaintiffs contend that arbitration is not appropriate here because, under the terms of the (would be) bill of lading, this Court has exclusive jurisdiction. (Pls.' Mem. at 2–3.) The Ecuadorian Line form bill of lading (Bloom Dec. ¶ 4), as noted, includes the following clause in Paragraph 16:

"Suits brought in the United States shall be filed in the United States District Court, Southern District of New York, which by this agreement shall have exclusive jurisdiction of all disputes arising out of this bill of lading." (Bloom Decl. Exs. 1, 3.)

Plaintiffs argue that the terms of the bill of lading should govern—even though no bill of lading was ever issued and/or executed for the lost shrimp—since, they contend, if the cargo had arrived at the port of Guayaquil, a bill of lading would have been issued.[5] Defendants argue that the Service Contract, not the bill of lading, is the controlling contract of carriage, and even if the bill of lading had been issued, the terms of the Service Contract—including the obligation to arbitrate—would have been incorporated into the bill of lading. (Defs.' Reply Mem. at 5–6.) Furthermore,

Defendants contend that a bill of lading would only be applicable to cargo which was actually shipped. (Defs.' Reply Mem. at 6.) Thus, Defendants urge, the bill of lading does not apply to the missing shrimp.

**The Court believes the bill of lading forum selection provision does not apply here for several reasons.** First, the Service Contract is compatible with (and may be said to supersede) the bill of lading. The Service Contract may be construed to provide that the jurisdictional clause contained in the bill of lading would not govern this dispute even if a bill of lading had been executed. Paragraph 7 of Appendix 1 to the Service Contract provides:

"**Except as otherwise expressly provided herein,** all CARGO shipped under this Service Contract shall be subject to CARRIER'S governing tariff(s) in effect at the time of shipment and all applicable rules, regulations, terms, and conditions contained in CARRIER'S bills of lading issued for such CARGO. All provisions of such tariff(s) and bills of lading are hereby incorporated in this Service Contract." (Halaszynski Aff. Ex. 1 at 3.) (emphasis added).

The "except as otherwise expressly provided herein" language indicates that where there is express language in the Service Contract which conflicts with a bill of lading, the language of the Service Contract controls. Thus, because the arbitration clause is an express provision of the Service Contract, the Service Contract would not be subject to contrary forum selection terms and conditions of a bill of lading. In addition, Paragraph 7 of Appendix 2 to the Service Contract states specifically that "all Bills of Lading must be claused 'CARGO SHIPPED PURSUANT TO SERVICE CONTRACT 97–35.' "[6] (Halaszynski Aff. Ex. 1 at 7.)

---

5. It is undisputed that Eastern Fish has been doing business with Ecuadorian Line since 1984 and that Ecuadorian Line has carried shipments of seafood from suppliers in Ecuador to New York. (Bloom Dec. ¶ 2.)

6. This same language is found in Amendment No. 4 to the Service Contract, which became effective February 19, 1998. (Halaszynski Aff. Ex. 2 at 2.) Past bills of lading, as well as bills of lading that were issued for the nine containers were marked: 'CARGO SHIPPED

Second, a bill of lading for the lost container of shrimp was, as noted, never issued presumably because the shrimp never reached the port of Guayaquil (i.e., it was hijacked along the way). Because it was never signed and executed, the bill of lading is not enforceable. "Where the agreement takes the form of a written instrument, the acceptance is effective only when the document has been signed..." *Antonucci v. Stevens Dodge, Inc.*, 73 Misc.2d 173, 175, 340 N.Y.S.2d 979, 982 (1973).

■ Third, this is not a case where the party sought to be bound (e.g. the consignee) had executed only the bill of lading and was a "stranger" to the Service Contract. Here, Eastern Fish is a party both to the Service Contract as well as to Ecuadorian Line's (would be) bill of lading. (Bloom Aff. Exs. 1, 3; Halaszynski Aff. Ex. 1 at 1.) Where, unlike this case, the consignee is not a party to the service contract or charter party, but only to the bill of lading, it may be appropriate that the bill of lading become the contract of carriage and that its terms control disputes between the consignee and the carrier. *See Cargill Inc. v. Golden Chariot MV,* 31 F.3d 316, 318 (5th Cir.1994); *Associated Metals & Minerals Corp. v. M/V VENTURE,* 554 F.Supp. 281, 283 (E.D.La.1983) (citing *Chilean Nitrate Sales Corp. v. the Nortuna,* 128 F.Supp. 938 (S.D.N.Y.1955)). If, however, the bill of lading incorporates a provision of the service contract or charter party, then that (incorporated) provision may be binding on the third party (i.e., the "stranger" to the Service Contract). *See Progressive Casualty,* 991 F.2d at 48; *Import Export Steel Corp. v. Mississippi Valley Barge Line Co.,* 351 F.2d 503, 505–506 (2d Cir.1965); *Son Shipping Co. v. De Fosse & Tanghe,* 199 F.2d 687, 688 (2d Cir.1952). Here, among other reasons, because Eastern Fish is both a party to the Service Contract and the (would be) bill of lading, the bill of lading "is a mere receipt as between the parties to the charter and does not perform the additional function as a contract for the carriage of goods." *Nichimen Co. v. M.V. Farland,* 462 F.2d 319, 328 (2d Cir.1972).[7] Thus, the parties' relations here are governed by the Service Contract.

Fourth, the cases cited by Plaintiffs (to support their argument that although the bill of lading was never issued, "it is well settled that, as long as a bill of lading would have been issued in the ordinary course of business, the bill of lading serves as a contract governing the relationship of a shipper and carrier even if it was not actually issued," *Ironfarmers Parts & Equipment v. Compagnie Generale Maritime et Financiere,* 1994 AMC 2915, 2917 (S.D.Ga.1994)) are distinguishable. Plaintiffs' cited cases do not involve express contractual conflict with bills of lading. Also, the terms sought to be enforced and contained in (non-issued) bills of lading (referred to in the cases Plaintiffs cite) did not relate to the method of dispute resolution.[8] Plaintiffs' cited cases involve parties who had contracted for (only) one shipment; they do not involve ongoing relationships through service contract(s) as in the case at bar. Finally, the cited cases involve cargo which had reached the sea

PURSUANT TO SERVICE CONTRACT 97–35.' (Bloom Aff. Exs. 1, 3.)

7. This is a flexible rule, subject to contractual modifications by the parties. In *Zim Israel Navigation Co., Ltd. v. Indonesian Exports Development Corp.,* 1993 WL 88223 *1 (S.D.N.Y. 1993), a clause in the service contract indicated that "if under the terms of the [Service Contract] any conditions are contrary to the conditions of the Carrier's Bill of Lading the latter shall prevail."

8. *See Luckenbach S S Co. v. American Mills Co.,* 24 F.2d 704, 705 (5th Cir.1928) (clause exempting the carrier from liability for loss by fire enforced); *Ironfarmers Parts & Equipment,* 1994 AMC at 2917 (Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 1300 *et. seq.,* one-year statute of limitations upheld and case time-barred); *New Hampshire Insurance Co. v. Seaboard Marine Ltd.,* 1992 AMC 279, 281, 1992 WL 33861 (S.D.Fla.1992) (COGSA provision which limits carrier's liability to $500 per package enforced); *Berkshire Knitting Mills v. Moore–McCormack Lines, Inc.,* 265 F.Supp. 846, 848 (S.D.N.Y. 1965) (COGSA clause limiting carrier's liability for lost or damaged cargo to $500 upheld).

carriers' pier(s).[9] The frozen shrimp at bar never reached the port in Ecuador.

## C. *Waiver of arbitration*

■ Plaintiffs contend that Defendants have waived their right to arbitration because Defendants have taken (extensive) steps in furtherance of the instant litigation and also because Defendants waited until approximately six months after the instant complaint was filed to move the matter to arbitration. (Mazaroli Aff. ¶¶ 2–7; Mazaroli Aff. Exs. 1–8.) Defendants argue that time delay alone is not dispositive; and that Plaintiffs will suffer no prejudice if the instant action is stayed or dismissed and arbitration is pursued. (Defs.' Reply Mem. at 8–10.) The Court agrees that Defendants have not waived arbitration.

Because there is a strong federal policy in favor arbitration, a waiver of arbitration "is not to be lightly inferred." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985) (quoting *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir.1968)). "The amount of litigation (usually exchanges of pleadings and discovery), the time elapsed from the commencement of litigation to the request for arbitration, and the proof of prejudice are all factors to be considered. The proximity of a trial date when arbitration is sought is also relevant." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir.1995); *see also PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 109 (2d Cir.1997); *Com–Tech Assocs. v. Computer Assocs. Int'l. Inc.*, 938 F.2d 1574, 1576–77 (2d Cir.1991). Resolving the issue of waiver is fact specific, and there is no bright-line test. *See Leadertex*, 67 F.3d at 25.

Apart from the public policy against waiver, there are several additional reasons why Defendants have not waived their right to arbitration here. First, the amount of litigation has been relatively minimal. The complaint and answer are essentially the only pleadings that have been exchanged. Little discovery has been conducted to date. While notices of deposition have been served by both sides, no deposition(s) have been conducted. (Defs.' Reply Mem. at p. 10, n. 1.)

A delay of six months, i.e., from April until October 1999, before seeking to enforce the contractual arbitration clause, does not in and of itself constitute waiver. No trial date had been set by the Court when the motion to dismiss or stay this action was made by Defendants—nor has one been set as of this date. *See In re S & R Company of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir.1998) (Petitioners actively participated in litigation for 15 months before seeking to invoke their right to arbitrate on the eve of trial); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir.1991) (Four years passed between the time plaintiff first brought suit and defendant raised the arbitration issue, during which defendant engaged in extensive pretrial litigation); *Com–Tech*, 938 F.2d at 1577–78 (Defendants participated in 18 months of litigation including extensive discovery and only raised arbitration in motion for judgment on pleadings four months before trial); *Thyssen, Inc. v. M/V Markos N, Et. Al.*, 1999 AMC 2515, 2525 (S.D.N.Y.1999) (Defendants waited 20 months after filing of the original complaint before mentioning the arbitration clause in a motion).

Moreover, a delay in seeking arbitration does not usually result in waiver unless it prejudices the opposing party. *See Com–Tech*, 938 F.2d at 1576; *Rush*, 779 F.2d at 887; *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir.), *cert. denied*, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985). "Sufficient prej-

9.  *See Luckenbach S S*, 24 F.2d at 705 (1,450 cots destroyed by fire while on the wharf awaiting loading); *Ironfarmers Parts & Equipment*, 1994 AMC at 2916 (tractor, while being operated by pier stevedore, prior to loading, was damaged); *New Hampshire Insurance,* 1992 AMC at 279 (yacht was dropped while lifting it with cranes to cargo ship); *Berkshire Knitting Mills*, 265 F.Supp. at 847 (portion of knitting machine dropped while being off-loaded at pier to await sea transport).

udice to infer waiver has been found when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." *Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993) (internal citations omitted); *see also PPG Indus.,* 128 F.3d at 109. There is no such prejudice here. Plaintiffs were on notice that Defendants might seek arbitration as soon as Defendants raised the arbitration issue in their answer:

> "AS AND FOR A TWENTIETH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE TWENTY-THIRD: This Answer is made without waiver of any jurisdictional defenses or rights to arbitrate that may exist between the parties." (Smith Aff. Ex. B at 6.)

The Court recognizes that Eastern Fish has incurred pre-trial costs due to the instant litigation. "Pretrial expense and delayunfortunately inherent in litigationwithout more, do not constitute prejudice sufficient to support a finding of waiver." *Leadertex,* 67 F.3d at 26; *see also Rush,* 779 F.2d at 887–88; *Hatzlachh Supply Inc. v. Moishe's Electronics, Inc.,* 828 F.Supp. 178, 184 (S.D.N.Y.1993). The burden of proving prejudice rests on Plaintiffs, as the parties seeking to defeat arbitration, *see Marubeni v. M/V OHFU,* 1996 AMC 1051, 1054, 1996 WL 84485 (S.D.N.Y.1996), and they have not sufficiently met that burden.

Plaintiffs contend that Defendants' delay is prejudicial because if arbitration is commenced, Defendants may argue that Plaintiffs' claim is time-barred under COGSA, 46 U.S.C. § 1303(6), which provides that suit must be "brought within one year after delivery of the goods or the date when the goods should have been delivered," in this case May of 1998. This argument is not persuasive. COGSA applies to claims governed by bills of lading which, as noted, is not this case. (Bloom Decl. Exs. 1, 3.) Even if COGSA were applicable and the demand for arbitration were not made within the one-year limitation, it may be argued that "there is, nevertheless, no time bar because arbitration is not within the term 'suit' as used in the statute." *Son Shipping,* 199 F.2d at 689. "In short, where parties have agreed to settle differences by arbitration, they should not be denied access to that forum, regardless of COGSA's one-year time-bar, provided they invoke arbitration within a reasonable time after their differences have arisen. Thereafter, it is for the arbitrators, not the court, to decide whether a claim is time-barred by their agreement," *Office of Supply, Government of Republic of Korea v. New York Navigation Co.,* 469 F.2d 377, 380 (2d Cir.1972).

Also, it is well established that "once a court determines that the parties agreed to arbitrate a dispute, then that dispute must be submitted to the arbitrator." *Thomas James Assoc. v. Jameson,* 102 F.3d 60, 68 (2d Cir.1996) (quoting *Local Union No. 370 of the International Union of Operating Engineers v. Morrison–Knudsen Co.,* 786 F.2d 1356, 1358 (9th Cir.1986)). "It is up to the arbitrators, not the court, to decide the validity of time-bar defenses." *See Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2d Cir.1991); *British Insurance Company of Cayman v. Water Street Insurance Co., Ltd.,* 93 F.Supp.2d 506, 521 (S.D.N.Y.2000). "Once a court has answered questions of arbitrability... the court must refrain from deciding the validity of any asserted 'defenses rather than [referring] their resolution to any arbitrator.'" *Thyssen Inc.,* 1999 AMC at 2527.

### III. *Order*

For the reasons stated above, Defendants' motion [14–1] to dismiss the proceedings pending arbitration is granted.[10]

---

**10.** The "weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds,* 975 F.2d 1161, 1164 (5th Cir.1992); *see also Sparling v. Hoffman Construction Co.,*

**The parties are directed forthwith to proceed to arbitration.** The Clerk is respectfully directed to dismiss the case.

*Inc.,* 864 F.2d 635, 638 (9th Cir.1988); *Aerotel v. RSL Communications,* 99 F.Supp.2d 368, 373 (S.D.N.Y.2000); *Marubeni,* 1996 AMC at 1056. "As all of the plaintiff's claims must be submitted to arbitration, no useful purpose will be served by granting a stay of these proceedings." *Berger v. Cantor Fitzgerald Secs.,* 967 F.Supp. 91, 96 (S.D.N.Y.1997) (internal citations omitted).