**Pamela L. MILGRIM, Plaintiff,**

**v.**

**BACKROADS, INC. and Backroads International, Inc., Defendants.**

**No. 00 CIV. 6212(SHS).**

United States District Court, S.D. New York.

May 1, 2001.

**472**

Pamela L. Milgrim, New York City, pro se.

*OPINION AND ORDER*

STEIN, District Judge.

Pamela Milgrim, an attorney acting pro se, brought this action to recover damages for injuries she allegedly sustained while on a bicycle tour organized and operated by Backroads, Inc.[1] Milgrim alleges that Backroads was negligent and reckless with respect to the repair, maintenance and replacement of a bicycle she rode during the tour, and that Backroads breached express and implied warranties that the bicycle in question was reasonably fit for its intended purposes.

Backroads now moves to dismiss the complaint—or, in the alternative, to stay proceedings—pursuant to the Federal Arbitration Act on the ground that this dispute is the subject of an arbitration agreement. Milgrim opposes that motion on the ground that the arbitration agreement is not a valid and enforceable contract. Because the Court finds that the parties entered into a valid and enforceable arbitration agreement, Backroads' motion to dismiss the complaint is granted.

## I.  BACKGROUND

In July 1999, Milgrim, after reviewing Backroads' promotional 1999–2000 brochure, telephoned the company and placed herself on a waiting list for a European bicycle tour. Milgrim Aff. ¶¶ 5–7. Later that month, a Backroads representative contacted Milgrim about an opening on a Loire Valley bicycle tour beginning August 22, 1999. *Id.* ¶ 8. In order to secure space on that tour, Milgrim paid the full trip price of $2,738. *Id.* ¶ 10. At that time, the representative informed Milgrim that she would be subject to substantial penalties in the event of a cancellation. *Id.* ¶¶ 9, 13.

In early August 1999, Milgrim received a copy of Backroads' "Travel Planner" for the tour which included a form entitled "Release of Liability and Assumption of All Risks" ("Release"). *Id.* at ¶ 18. The

---

1. After commencing this action, Milgrim agreed to dismiss Backroads International, Inc. as a defendant.

Release states that "No additions, deletions or changes can be made to the release form, and signing it is a requirement for joining the trip." *Id.* Ex. 4. The Release also provides, in pertinent part:

> In the unlikely event a legal dispute should arise involving any subject matter whatsoever, I agree that the following conditions will apply: (a) the dispute shall be settled by binding arbitration through the American Arbitration Association at San Francisco, California. . . .

*Id.* Under the heading "Knowing and Voluntary Execution" and immediately above the signature line, the Release further provides:

> I have carefully read and fully understand the contents and legal ramifications of this agreement as well as all the conditions as stated under the heading "Important Information" of the current catalog including those regarding cancellation and refund policies. I understand that this is a legally binding and enforceable contract and sign it of my own free will.

*Id.* Milgrim signed the Release on August 9, 1999 and faxed it to Backroads the next day. *Id.* ¶ 24.

Although Milgrim claims that the Release is not referenced "anywhere in defendant's 172–page promotional brochure," *id.* at ¶ 23, the brochure—annexed to Milgrim's affidavit in opposition to this motion—clearly refers to the Release on a page entitled "IMPORTANT INFORMATION PLEASE READ CAREFULLY." *Id.* Ex. 1, at 163. Beneath the heading "Guest Responsibility" on that page is the following:

> Guests are responsible for: choosing a trip that suits their abilities, level of fitness and state of health (for assistance, refer to "Choosing the Right Trip" on page 162): providing the Backroads office with signed release and medical information forms prior to trip departure. . . .

*Id.* The brochure does not describe, however, the terms of the release that guests must sign and return prior to their trip. *Id.*

On the same page, beneath the heading "Cancellations & Refunds," Backroads sets forth penalties incurred if a tour participant cancels her trip. *Id.* Specifically, if a traveler cancels within 15–29 days of a tour, the cancellation fee amounts to 85% of the trip price, and if a traveler cancels within 14 days of a tour, the cancellation fee is 100% of the trip price. *Id.* The brochure also provides that "Exceptions to this [cancellation] policy cannot be made for any reason." *Id.*

The parties dispute whether Backroads' stated cancellation policy would have applied had Milgrim refused to sign the Release. Milgrim, relying on the stated policy, contends that her refusal to sign the Release would have subjected her to at least an 85% cancellation policy, since she only received the "Travel Planner" in early August. Milgrim Aff. ¶ 25. Thus, claims Milgrim, she "had no realistic option but to sign the Release." *Id.* ¶ 27. Backroads contends that its stated cancellation policy does not apply where a customer refuses to sign a release, and, accordingly, it would have provided Milgrim a full refund if she had canceled because of an objection to the Release. Kravets Supp. Dec. at ¶ 4. Prior to serving the summons and complaint, however, Milgrim never contacted Backroads to object to the release, and Backroads never informed Milgrim of this unwritten exception to the written cancellation policy. *Id.* ¶ 7.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") provides that in any contract involving

commerce "an agreement in writing to submit to arbitration an existing controversy... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Pursuant to the FAA, a federal court "shall" stay an action pending arbitration in any suit involving "any issue referable to arbitration" pursuant to a written arbitration agreement. *Id.* § 3.

In determining whether a dispute is subject to arbitration, a court must first decide "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 225–26 (2d Cir. 2001) (quoting *National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir.1996)); *see also Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 75 (2d Cir.1998). In this case, Milgrim contends principally that the purported arbitration clause is invalid. In the alternative, she argues that even if the agreement is valid, it merely permits—but does not require—arbitration.

A. The Agreement to Arbitrate is Valid.

Milgrim mounts two attacks on the validity of the arbitration agreement. First, she claims that it is not binding because it modified her contract with Backroads without additional consideration. Second, she claims that the arbitration agreement is unenforceable because Backroads did not provide her with reasonable notice of the Release and because refusal to sign the Release would have subjected her to substantial penalties.

As an initial matter, the Court must determine what law governs the enforceability of the arbitration agreement.

1. *New York law applies to this dispute.*

Where a party to a dispute contests the validity of an arbitration agreement, "state [contract] law determines whether the parties in fact have agreed to arbitrate." *Berger v. Cantor Fitzgerald Sec.*, 967 F.Supp. 91, 93 (S.D.N.Y.1997); *see also Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir.2000). Because federal subject matter jurisdiction in this case is based on diversity of citizenship, New York's choice of law provisions determine which state's contract law governs the validity of the arbitration agreement at issue. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir.1998).

In a contract case, "New York courts will normally apply the law of the jurisdiction having the greatest interest in the litigation, as measured by that jurisdiction's contacts with the litigation." *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 559, 607–08 (2d Cir.2001). Here, New York has the greatest interest in the litigation, since Milgrim is a citizen and domiciliary of New York, she accepted Backroad's offer in New York, and because she executed the Release—the validity of which is the principal issue before the Court—in New York. New York law will therefore apply.

2. *The Release did not modify the contract.*

Milgrim first attacks the validity of the Release by contending that it was a modification of her contract with Backroads that was unsupported by consideration, and thus unenforceable. *See, e.g., Tierney v.*

*Capricorn Investors, L.P.,* 189 A.D.2d 629, 631, 592 N.Y.S.2d 700, 703 (1st Dep't 1993). The reference to a release in the brochure, however, placed Milgrim on notice that a release would be part of any contract between her and Backroads. Accordingly, either the contract for the tour included a requirement that Milgrim execute the Release, *cf. Nau v. Vulcan Rail & Constr. Comp.,* 286 N.Y. 188, 196, 36 N.E.2d 106, 110 (1941); *Sbarra v. Totolis,* 191 A.D.2d 867, 870, 594 N.Y.S.2d 868, 870 (3d Dep't 1993), or, because Backroads does not inform tour participants of the precise terms of the Release before collecting funds for tours, no true meeting of the minds occurs until those terms are disclosed and the Release is executed.

■ In this case, it is undisputed that Milgrim, after receiving the release, executed and returned it to Backroads without objecting to its terms. Accordingly, regardless of whether execution of the Release is considered one of Milgrim's obligations under the contract or no contract was formed at all until she executed the Release, it did not constitute a modification of an existing contract without consideration.

### 3. *The Release was not executed under duress or coercion.*

Milgrim's second attack on the Release is that the Release is unenforceable because it was obtained under duress or under such conditions as to render it a contract of adhesion. Each will be addressed in turn.

■ Duress "may be said to exist where one is compelled to perform an act which he has the legal right to abstain from performing. The compulsion must be such as to overcome the exercise of free will." *Gerstein v. 532 Broad Hollow Rd. Co.,* 75 A.D.2d 292, 297, 429 N.Y.S.2d 195, 199 (1st Dep't 1980). However, a party who acquiesces in or accepts the benefits of a contract executed under conditions of duress may waive an otherwise valid claim of duress. *See, e.g., Sheindlin v. Sheindlin,* 88 A.D.2d 930, 931, 450 N.Y.S.2d 881, 882 (2d Dep't 1982). A party claiming duress "must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *DiRose v. PK Management Corp.,* 691 F.2d 628, 633–34 (2d Cir.1982).

■ Although Milgrim claims she was faced with the Hobson's choice of signing the Release or forfeiting all or substantially all of her trip price, that choice, even if true, is insufficient as a matter of law to constitute duress. As Milgrim concedes, if she had refused to sign the Release and, as a result, Backroads refused to either provide the tour or refund her money, she "could have obtained a refund of her trip price . . . by commencing a lawsuit." Pl.'s Mem. at 12. "Since the possibility of obtaining redress through litigation remained available," any claim of duress must fail. *Int'l Halliwell Mines, Ltd. v. Continental Copper & Steel Indus., Inc.,* 544 F.2d 105, 109 (2d Cir.1976). Moreover, Milgrim did not "act promptly to repudiate the contract" but instead acquiesced in the contract and accepted its benefits. She therefore waived her right to claim duress.

■ Nor was Milgrim coerced into signing a contract of adhesion. "Adhesion is found where the party seeking to enforce the contract used high pressure tactics or deceptive language in the contract and where there is inequality of bargaining power between the parties. In addition, it must be shown that the contract inflicts substantive unfairness on the weaker party." *In the Matter of the Arbitration of Karen Ball,* 236 A.D.2d 158, 161, 665 N.Y.S.2d 444, 446 (3d Dep't 1997). Here, Milgrim had sufficient time to read the

Release and seek clarification of its terms. By signing it, she acknowledged that she had "carefully read and fully underst[ood] the contents and legal ramifications of [the] agreement." Milgrim Aff. Ex. 4. Thus, Milgrim has failed to make the threshold showing of "high pressure tactics or deceptive language" required to render the Release a contract of adhesion.

"A party generally will be held to a signed contract unless he can demonstrate special circumstances, such as duress or coercion, that contradict his intent to be bound." *Chanchani v. Salomon/Smith Barney, Inc.*, 2001 WL 204214, *2, 2001 U.S. Dist. LEXIS 2036, *7 (S.D.N.Y. Mar. 1, 2001). Because Milgrim cannot claim duress or coercion, the portion of the Release requiring her to submit her claims to arbitration is valid and enforceable.

**B. The Agreement to Arbitrate Requires that this Dispute be Submitted to Arbitration.**

 Finally, Milgrim claims that even if the arbitration agreement is valid, it does not require arbitration, but merely permits it. This argument is belied by section 3 of the FAA which provides that a federal court "shall" stay an action pending arbitration in a suit involving "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Pursuant to section 3, "where a court is satisfied that a dispute is arbitrable, it must stay proceedings and order the parties to proceed to an arbitration." *Berger v. Cantor Fitzgerald Sec.*, 967 F.Supp. 91, 93 (S.D.N.Y.1997).

**C. This Action Should be Dismissed Rather than Stayed.**

Although section 3 of the FAA requires a federal court to stay an action to resolve a dispute subject to an arbitration agreement, courts have the discretion to dismiss—rather than stay—an action when all of the issues in it must be arbitrated. *Eastern Fish Comp. v. South Pacific Shipping Co., Ltd.*, 105 F.Supp.2d 234, 242 (S.D.N.Y.2000); *Berger v. Cantor Fitzgerald Sec.*, 967 F.Supp. 91, 96 (S.D.N.Y.1997). In this case, the parties' agreement to arbitrate encompasses all of the issues raised in Milgrim's complaint. Accordingly, dismissal of the complaint is appropriate.

## III. CONCLUSION

For the reasons set forth above, Backroads' motion to dismiss the complaint pursuant to the Federal Arbitration Act is granted.

SO ORDERED.